Ms. Levine for the petitioner, Ms. Mishra for the respondent. Good morning. Good morning, Your Honor, Your Honors. May it please the court. May I proceed, Your Honor? Yes, please proceed. Thank you. More than a decade after the underlying events, this case was remanded to the SEC to determine the impact of the Supreme Court's decision in Kokash on the lifetime bar imposed on Mr. John Saad. Kokash clarified the key principles that determine whether a sanction is punitive or remedial. The court focused first on whether a sanction addresses a public wrong or a private wrong, and second, on whether a sanction was imposed for punitive purposes, including deterrence. Applying both these principles, the lifetime bar imposed on Mr. Saad is clearly punitive. Mr. Saad's lifetime bar is intended to address a public wrong. His former employer, Penn Mutual, fired him long ago in 2006 and is not a party to this action. The lifetime bar was also clearly imposed for punitive purposes. In Kokash, the Supreme Court was explicit that deterrence is a punitive purpose, and both FINRA and the SEC have invoked deterrence as a primary reason for Mr. Saad's lifetime punishment. Nevertheless, on remand, the SEC ruled that Kokash has no bearing on its determination that Mr. Saad's lifetime bar is remedial, not punitive. This is error and should be reversed. Thank you very much. Ms. Levine, let me ask you a question. Let me ask you to react to how I see this case, and you tell me if that's not right. What I'm wondering is whether this isn't just a typical situation we see from time to time, which is when is our case law, that is the case law of the D.C. Circuit, affected or changed by a later Supreme Court decision? And here's what I mean by that. Before Kokash, before the Supreme Court decided that case, beginning in Johnson, which the Commission cites in its opinion, and through cases like Siegel, PAZ, and even SAW 1 in this case, we've repeatedly distinguished between the analysis under Section 2462, the statute at issue in Kokash, and other provisions like constitutional cases and security cases and other cases. Tell me what in Kokash requires us to abandon that distinction. The case before us is not a 2462 case. What in Kokash requires us to change Johnson, PAZ, abandon all those cases? Yes, Your Honor. And I would say the court in Kokash could have, I think, done what it is that you're indicating and narrowly limited its holding and its ruling to 2642. Kokash emphasizes that the sole question presented in this case is whether this court, which is subject to 2462 limitations. It limited the case. Kokash tells us... And that's exactly what we did in Johnson. We applied, right? Isn't that correct? Respectfully, I would disagree, Your Honor. In Kokash, the court tells us, it begins its key analysis by saying a penalty is a punishment, whether corporal or pecuniary, imposed and enforced by the state. And it cites 19th century case law, Huntington v. Attrill, which has nothing to do with Section 2642. It's a full faith and credit case. It's completely unrelated. And that's the foundational definition that the court in Kokash begins with. And then it announces the two clear principles, whether it's a public wrong or a private wrong, and then whether it's done for punitive purposes, including deterrence. And none of that rises and falls on the statutory language of 2642. And it's quite clear that the court could have crafted this in a more narrow way, and it didn't. And I would look to Kokash's own statement of its holding. Kokash tells us that disgorgement bears all the hallmarks of a penalty. It's imposed as a consequence of violating the public law, and it's intended to deter, not to compensate. The five-year statute of limitation, therefore, applies. The principles that Kokash announces in the very utterance where it's telling us what its conclusion is, are these two principles, which are not limited. The court does not limit them to 2642. Ms. Levine, the Supreme Court's decision in Liu shows that even on the very issue of the nature of the disgorgement sanction at issue in Kokash, Kokash's reasoning for purposes of 2462 does not apply to answer the question whether a sanction is excessive or oppressive under 78S. So we've already seen the very court that decided Kokash tell us that we don't transfer that reasoning. I mean, the court barely refers to Kokash in Liu, instead looking at a whole different line of law. So doesn't that really tell us that the Kokash analysis does not apply to the interpretation of excessive or oppressive? Respectfully, I would disagree. The issue in Liu, and this is what Judge Tatel is referring to with the footnote in Kokash that reserves this predicate issue, is about the nature of the SEC's authority to impose disgorgement. And part of the problem faced with that question is that there was no clear statutory language that gave the SEC authority to recover disgorgement, which had become a very widespread practice. And it's clear in Liu, and as you know, Liu decided close in time after Kokash. Liu decided 8-1 with the 8 having been in the majority of Kokash. Liu favorably invokes and refers to Kokash. But Kokash's own announcement of what is a penalty, what is a punitive sanction, how do we distinguish between remedial sanction and a punitive sanction, it's not dictum, it's necessary to the court's holding. But isn't in question whether that understanding of what's punitive necessarily informs our reading of what's excessive or oppressive under the Exchange Act. And, I mean, the Exchange Act expressly calls for appropriate rules that, you know, for FINRA rules that would provide for appropriate discipline, including permanent bars, including permanent bars. And it refers very much to protecting investors and the public interest. So it's hard to see how one could square the mandate of Congress in the Exchange Act with Kokash's limiting principles, which say, no, don't look at the public, look only at the harmed individual. With respect, Your Honor, the statutes that are at issue here that authorize FINRA, other securities associations to impose debarment, censures, and fines that are fitting, and the statute uses that word fitting. And then the statute that gives the SEC supervisory authority to ensure that whatever FINRA imposes is not excessive or oppressive. Those are compatible with the ruling in Kokash, the definitions, the principles that are laid out defining remedial and punitive. Both those statutes can be read perfectly coherently. FINRA can impose a bar, and the SEC can determine whether it's excessive or oppressive. Nothing requires the SEC to hold that it's remedial under the statutes or under Kokash. As we know, it's this court's prior ruling in PAZ, which I think as then-Judge Kavanaugh referred to as a two-line quotation from the Wright case in 1940, that overlaid, it added an additional requirement under excessive and oppressive. It interpreted that as requiring a remedial sanction. That's nowhere in the statutes, and that is not consistent with Kokash because Kokash has defined what is a remedial sanction and what is a punitive sanction. That was the key issue that was presented in Kokash, and they announced a definition and principles which are not limited to 2642. The court did not itself limit it, and to do otherwise is to refuse to give effect to the holding in Kokash. I'm not necessarily following you. How could Kokash's first principle that a sanction redress a wrong to an individual and not to the public be satisfied in the context of applying a bar to prevent a deceptive securities professional from jeopardizing the public going forward? Well, Your Honor, these examples are in our briefs as well. You could have a situation where someone applied to associate with a broker-dealer or whatnot. I understand there are one or two examples, but surely that's not everything that Congress was thinking about. And it's not the typical case that the commission or the FINRA is using a bar for. So you would point to that as the only thing Congress was thinking about. No, Your Honor. Actually, what I would say is in light of Kokash, that's not a problem in the sense that it's possible that many of FINRA's debarments are punitive sanctions. They may be intended to address a public wrong and may be done for punitive purposes, including deterrence, as we see the lifetime bar that was imposed on Mr. Saad here. And that's permissible under the statute. The SEC by Congress is tasked with evaluating whether that sanction, whether that punitive sanction is excessive or oppressive. And that's a meaningful determination. So you're saying that we can decouple our reading of excessive or oppressive from something that's punitive. But because we haven't done that, we have to bring in the Kokash reading of what's punitive? Our position is we need to give effect, and this court respectfully needs to give effect to what Kokash announced in terms of the definition of what is a punitive sanction and what is a remedial sanction. And before Kokash, this court had imposed an additional obligation that's not present in the statutory language and said that a FINRA bar that's upheld by the SEC must be a remedial sanction. What Kokash has taught us is that if you look at the bars, it actually fits the court's definition of a punitive sanction. Punitive sanctions can be consistent with the SEC's mandate to ensure that a bar is not excessive or oppressive. And in fact, we see Congress in its language intending to require proportionality. FINRA can impose a censure, a fine, a suspension, as long as it's fitting. The word fitting is in that obligation. And SEC needs to determine whether it's excessive or oppressive. The SEC can. It's authorized under the statute to uphold a punitive sanction. And Kokash has told us, it has clarified in a way that was not understood, I don't think, in this circuit and possibly other circuits, how a punitive sanction is defined and how a remedial sanction is defined. But to hold otherwise would be to severely limit a fair reading of Kokash. We think the announcement of the holding is clearly not just that disgorgement qualified as a penalty, but the court clearly uses the language of two principles that are not limited to and the defining case law does not address 2642. All right. That's all I have. Judge Wilkins, you got any questions? Because you're out of time. Sorry. Good. I'm sorry. Yeah, I just had one question. So, why is the commission wrong in its argument that the debarment can be remedial in this instance? Yes, Your Honor. For the reasons that under the two principles announced in Kokash, the bar is clearly intended to impose a public wrong, doesn't make sense as redressing a private wrong. And the court in Kokash was explicit that the second principle is that the sanction is imposed as for punitive purposes, including deterrence. The SEC itself has told us multiple times that deterrence is a factor in terms of the imposition of this bar, which we know this court has recognized as a capital sentence in the context. If it's not the only purpose, perhaps that is one of the purposes. But, you know, even restitution is deterrence in the sense that it will hopefully deter others from doing something wrong because they're not going to be able to retain their ill-gotten gains. I guess I'm just trying to understand what beyond deterrence do you have? Well, as Your Honor indicates, and is I think reflected in Kokash, in Kokash, the court told us that a remedial sanction must be solely remedial, but a punitive sanction, a sanction is considered to be punitive, even if it's in part punitive, in part remedial. So here we know, I mean, this is, you know, in SOD 1, the panel noted that the commission imposed the punishment as a deterrent to others. In SOD 2, they said the bar was appropriate because it serves important deterrent objectives. FINRA itself refers to deterrence in its rulings below. And so under Kokash, if a penalty is a remedial sanction, it must be exclusively remedial. But if it has mixed reasons, but at least some of them are punitive, the court is quite clear in Kokash that it qualifies as a punitive sanction. And, of course, that was the case in disgorgement, the sanction that the Kokash court was evaluating, that at times the court acknowledged it could be remedial, but at times it was punitive. And as a result, the court held that it was a penalty and applied that to the 2642 context. So to hear for the lifetime bar on Mr. Sod is punitive, and we see that in part from the multiple times in which there's an acknowledgement that it's been imposed punitively for deterrence purposes. All right. Thank you. Thank you, Ms. Haldane. We'll hear from the commission. Good morning, Your Honors. May it please the court, Dean Mishra for the Securities and Exchange Commission. Sustaining the commission's opinion follows from this court's Sod 2 decision, which approved the commission's focus in balancing and determining that the gravity of Sod's behavior warranted remedial action, specifically a remedy to protect ordinary American investors from his, repeating his intention to be a of money and lying to regulators in an industry that exists to honestly handle money. Sod 2 reserved only the sole Kokash question, which is whether Kokash's statute of limitation ruling changes the result here by silently rewriting the Exchange Act's section 1982's text and the established circuit precedent on its standard. Kokash by its own terms did not, and post-Kokash decisions, including the Supreme Court's in lieu, show that Kokash should be taken at its word on that. I'm happy to discuss further any questions that your owners may have. So your friend on the other side says that Kokash held that a sanction must be solely remedial. Otherwise, it is punitive. What's your response to that? So to be clear, in the first instance, Your Honor, we believe that Kokash does not rewrite the circuit precedent, which enables a consideration of various purposes, including that general deterrence can be considered as part of the broader remedial inquiry. But even under Kokash That's the point that Judge Tatum was making earlier. I believe so, Your Honor. And even under Kokash, the understanding of the Kokash formulation we've explicated in the brief, it's a little complicated, but it ultimately boils down to the notion of the question is whether the remedy can be fairly explained without requiring resort to punitive purposes. So even if there were some punitive effect or there were some purpose that was taken into account as part of the mix, if it can fairly be explained and justified, as the Commission did here in its only order under review, then it would not be a problem even under Kokash. And we're not allowed to consider the other instances where the Commission has explained that this is a deterrent? So we would make two points as to that, Your Honor. The first is that as this Court established in the course of decisions that were POS 1 through POS 2, the question is whether the order of the Commission that is under review here meets the standards to be a sustainable order and reasonably explained and justified. And that's true under the administrative law principles. So the statutory standard that the Commission is charged with applying is a question of whether the remedy is justified with regard to the public interest in the protection of investors and is essentially under the circuit precedent is necessary or appropriate to that end. So that's the first point we would say. The second point that we would point out is that most of the references that have been made in, as I saw them in the briefs, for example, by Saad to stray mentions of potential deterrence in prior opinions are mentions that are either taking the legal position that deterrence can be considered under the circuit precedent, which was, of course, even before Kokash established that it could be considered. And others were things that were more in the nature of describing deterrence as an incidental effect, not the primary purpose, which Kokash itself recognizes is not problematic. We have, you know, cited in our brief to other case law post-Kokash, such as I believe Collier, for example, and there's, I believe, a Ninth Circuit case may also make this point that if it's a question of predicting that deterrence may result, that certainly wouldn't be problematic. It's also the case that the core analysis that was made at all stages, but clearly in this commission's opinion, which expressly states that it was justifying without invoking deterrence as a justification, the analysis has been preventive in nature. And that preventive analysis is one that is longstanding, is recognized as appropriate, is remedial. That's something that even post-Kokash in 2462 cases, decisions like the Third Circuits and Gentile have found to be an appropriate standard. And Gentile actually referenced the analysis here, the preventive analysis from Sod in expressly endorsing that sort of goal of trying to prevent an individual who has taken money lide about it from repeating that issue with respect to investors and putting them at risk. So just isn't the plaintiff correct that we look at the question, whether Kokesh applies, we look at that de novo, that's a purely legal question. Yes, as to that question, Your Honor. I thought you were saying otherwise in your brief. No, to clarify, Your Honor, the position we're taking in our brief is that whether Kokesh applies is in part determined by the question of what the statute actually requires in this case. So whether the Kokesh should be expanded or should be understood or read to apply in this context has to be informed by the nature of what the statutory language is as it's been well understood by the commission and also by this court in long established circuit precedent that has described what that standard is in a manner that forecloses the arguments that Ms. Levine has been making about why Kokesh would apply here. So are there just two categories under Section 78 or three? We're talking about forward looking public regarding prophylaxis as remedial. That's to be distinguished from punitive penalty, even though it's not remedial in the sense of responding to the individual. Just help me map out. I mean, I understand that, you know, doctrinally, it doesn't seem like the Kokesh's application here is so clear that under Williams, it necessarily displaces circuit precedent. But just looking more broadly at how we make sense of these categories gets a little, it gets a little muddier. So I'm not quite sure I understand your question, but if your question is about how this standard operates under the existing statute and under the existing circuit precedent or is the question about under Kokesh what Kokesh's analysis is? Does Kokesh have any, raise any sort of guidance for us going forward in terms of the language that we've chosen to encapsulate excessive or oppressive? I mean, the statute doesn't use the language penalty or punitive, it uses excessive or oppressive. And I'm just wondering whether, you know, but we nonetheless have talked about punitive sanctions and those, that excessive or oppressive as an equation of punitive and that's where we get into the Kokesh issue. And I'm just wondering whether you think we should be rethinking that or whether that's a different kind of, you know, punitiveness? So we're not calling for this court to change its circuit precedent. We actually think that the way that the circuit precedent has evolved is derived from, as described, I think it's agreed upon, for example, by all the opinions in SOD 2, that it derives from some early cases in which the determination was made that this was a remedial statute, that this was, these are remedies that are remedial and not penalties because they are justified by means of, as a means of protecting investors if necessary or appropriate to that end. That's the standard that's described in Wright all the way back and in McCarthy and then in this court's precedent, I believe it's in, it could be POS 1 or POS 2, I think it's POS 2. So given that there is that standard and the question is about this protection of investors in the public interest, which are directly hooked and tethered language in the statute, we don't believe that this court needs to look beyond that to Kokesh's analysis, which was clearly cabined by Kokesh's own terms, as Lou confirms, to import or shoehorn that analysis into something that simply used some similar language. We think there's already a well-established body of understanding what it means for something to be remedial and not punitive in the sense meant by the Section 19E2 context, and so we don't believe that anything needs to be imported. Right. So it's just that there's a remedial discussion in Kokesh's questionnaire where we're talking about individuals, whereas the remedial discussion in our line of Section 78 cases is partly thinking about individuals and partly thinking about, as you said, protecting investors prospectively as well and protecting the private self-regulatory organizations and their membership. As it's evolved is that the standard has been justified in that language that comes from the statute that is focused on protecting investors in the public interest. So it's completely at odds with that to import a standard that, for example, keys itself off of whether, or at least in Saad's reading of it, keys itself off of whether something is directed at the public interest, for example. That's exactly an endorsed consideration, an endorsed justification under the statute. That's something that is directly at odds with something that would suggest that that deprives the authority to sustain a remedy of that nature. That's helpful. Anything else? Judge Filler, Judge Wilkins? Not for me. Thank you. Thank you. Ms. Levine, you were out of time, but if you have something that's responsive to what you just heard, you can have one minute. Very briefly, Your Honor, yes. In response to Judge Wilkins' question, of course, Kokesh expressly says a sanction is punitive if it constitutes punishment, even in part, and remedial only if it serves solely a remedial purpose. Also, as Judge Pillard addressed, excessive and oppressive does not require a punitive sanction. In Kokesh, the court is absolutely clear that acting in the public interest, and this is also at 1643, when the SEC seeks to discord and acts in the public interest to remedy harm to the public at large, and that that is still what was designated punitive. And finally, Your Honors, if this court doesn't take the opportunity to correct, at least acknowledge and reverse the SEC and its application interpretation of Kokesh, we're going to be left with a situation where the Supreme Court has defined a remedial sanction, defined a punitive sanction in a very succinct and principled way, but yet the circuit continues to force parties and the government agencies to use the label of remedial sanction in a way that is inconsistent with the definitions in Kokesh. And this appears to be an opportunity to prevent that ongoing situation. Thank you. Thank you. Thank you. The case is submitted.
judges: Tatel, Pillard, Wilkins